B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| | |

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
|---|---|
| | |

| **PARTY** (Check One Box Only)<br>□ Debtor          □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor        □ Other<br>□ Trustee | **PARTY** (Check One Box Only)<br>□ Debtor          □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor        □ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
    actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
    (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court
    if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |
| Other Relief Sought | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR | BANKRUPTCY CASE NO. | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| KNH Aviation Services, Inc. d/b/a | ) | Case # 15-01641-dd |
| AvCraft Technical Services, | ) | |
| | ) | |
| _____ Debtor. _____ | ) | |
| | ) | |
| Michelle L. Vieira as Chapter 7 Trustee for | ) | |
| KNH Aviation Services, Inc. d/b/a AvCraft | ) | |
| Technical Services, | ) | |
| | ) | Adv. Pro. No. 15-80___-dd |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Michael Hill; Donald Kamenz; Derek Nice; | ) | |
| and Carol Drew, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### COMPLAINT

Michelle L. Vieira ("Trustee"), as Chapter 7 Trustee for KNH Aviation Services,

Inc. d/b/a AvCraft Technical Services ("Debtor"), hereby alleges against Michael Hill

("Hill"); Donald Kamenz ("Kamenz"); Derek Nice ("Nice"); and Carol Drew ("Drew")

(collectively "Defendants" or "Original Directors") the following:

### PARTIES

1. Trustee is the Chapter 7 Trustee of the Debtor, appointed on March 24, 2015.

2. Hill is a citizen and resident of Georgetown County, South Carolina.

3. Kamenz is a citizen and resident of Palm Beach County, Florida.

4. Drew is a citizen and resident of Burlington, Ontario, Canada.

5. Nice is a citizen and resident of Burlington, Ontario, Canada.

## JURISDICTION

6. This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001.

7. On March 24, 2015 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of South Carolina (the "Bankruptcy Court"), Case No. 15-01641-dd (the "Bankruptcy").

8. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 157, and Local Civil Rule 83.IX.01 DSC.

9. This is a core proceeding by virtue of 28 U.S.C. § 157(b)(2)(A) and (O).

10. The Bankruptcy Court has the authority to enter a final order in this matter.

11. Trustee consents to the entry of final order or judgment by the Bankruptcy Court.

## BACKGROUND

12. The Debtor began doing business in September 2010, when it acquired the assets of a predecessor company.

13. Defendants have been directors and officers of the Debtor at least since September 2010.

14. The Original Directors, through various entities, are also the owners of the Debtor.

15. Jesper Lundberg ("Lundberg") became a director of the Debtor in February 2012, as part of a transaction between the Debtor and a company for which Lundberg is an officer, Sun Air of Scandinavia A/S ("Sun Air").

*Undercapitalization of the Debtor*

16. On September 30, 2010, the Debtor entered into an agreement wherein it

purchased certain assets of AvCraft Support Services, Inc. ("AvCraft"), and some of AvCraft's related entities, through a foreclosure sale conducted by Maple Bank GmbH ("Maple").

17. Maple financed the transaction in the amount of $700,000.

18. At this point, the Debtor's owners made their equity investments into the Debtor.

19. The four owners each contributed $50,000 in equity and $100,000 in loans.

20. At the time that the Debtor began doing business, it had $200,000 in capital and $1.1 million in debt.

21. The Debtor was undercapitalized from the beginning of its operations.

22. At no point between September 2010 and February 2012 did the Original Directors require the owners to infuse additional capital to properly capitalize the Debtor.

23. At no point between February 2012 and the Petition Date did the Defendants require the owners to infuse additional capital to properly capitalize the Debtor.

24. From September 30, 2010 to the Petition Date, the Debtor was insolvent in that its liabilities exceeded its assets.

*Debtor's Sale of Equipment to Sun Air*

25. On or around November 22, 2011, the Debtor entered into an Equipment Purchase and Leaseback Agreement (the "Sale Agreement") with Sun Air, which states that the Debtor sold certain tooling and equipment to Sun Air for a purchase price of $200,000.

26. At the time that the Debtor and Sun Air entered into the Sale Agreement, the equipment subject to the Sale Agreement was worth at least $356,000.

27. Kamenz, Hill, and Nice executed a corporate resolution, a true and correct copy of which is attached hereto as <u>Exhibit A</u> and incorporated herein by reference, dated November 21, 2011, approving the Sale Agreement.

28. The Sale Agreement caused the Debtor to transfer ownership of equipment for substantially less than its fair market value.

<em>Debtor's Lease of Equipment from Sun Air</em>

29. On or around November 22, 2011, the Debtor entered into an Equipment Lease with Option to Purchase (the "Lease Agreement"), which states that the Debtor leased certain tooling and equipment from Sun Air.

30. Upon information and belief, the Lease Agreement was for the same tooling and equipment which the Debtor sold to Sun Air pursuant to the Sale Agreement.

31. The Lease Agreement provided that the Debtor would make monthly rent payments to Sun Air in the amount of $2,500 for ten (10) years.

32. Upon information and belief, ten years is longer than the economic life of the tooling and equipment which was the subject of the lease.

33. The Lease Agreement also contained a provision that required the Debtor to add Lundberg to its Board of Directors.

34. Kamenz, Hill, and Nice executed a corporate resolution, a true and correct copy of which is attached hereto as <u>Exhibit B</u> and incorporated herein by reference, dated November 21, 2011, approving the Lease Agreement.

35. At the February 23, 2012 meeting of the Debtor's Board of Directors, the Original Directors unanimously elected Lundberg to the Board of Directors, as indicated by the minutes of such meeting, a true and correct copy of which are attached

hereto as <u>Exhibit C</u> and incorporated herein by reference.

36. The Lease Agreement resulted in the Debtor leasing back equipment, which it had previously owned, for longer than the useful life of the equipment.

37. The Lease Agreement resulted in the Debtor being required to pay $500,000 for ownership of equipment that it had sold for $200,000.

38. The Lease Agreement is a disguised secured transaction.

39. Sun Air's security interest in the tooling and equipment is not properly perfected and is avoidable by the Trustee.

*Sun Air's Recovery of the Equipment*

40. On or around March 3, 2015, Hill sent correspondence to Sun Air, a true and correct copy of which is attached hereto as <u>Exhibit D</u> and incorporated herein by reference, advising Sun Air that the Debtor wanted to "see Sun Air's rights and interests in its machinery and equipment protected."

41. The correspondence further advised that bankruptcy might be imminent and that Sun Air should remove the tooling and equipment subject to the Lease Agreement no later than March 22, 2015.

42. On or about March 22, 2015, Lundberg, on behalf of Sun Air and with the cooperation and assistance of the Debtor, removed several shipping containers of tooling and equipment from the Debtor's premises.

43. The tooling and equipment was shipped to Denmark immediately after its removal.

44. The Bankruptcy was filed on the Petition Date, and the bankruptcy schedules indicating the equipment removal were filed on April 7, 2015.

45. Hill and Lundberg, through an entity known as YJM Aviation, LLC ("YJM"), are also partners in a separate business venture, CCS Aviation, LLC ("CCS"), which remains active.

46. Upon information and belief, this separate business relationship between Hill and Lundberg contributed to Hill's attempt to protect the interests of Sun Air.

47. The Trustee's attempts to recover the removed assets from Sun Air have been made significantly more difficult due to the fact that Sun Air is a business entity organized and doing business outside of the United States.

48. By allowing Sun Air to remove this property prior to the bankruptcy filing, the Defendants caused the Debtor to lose hundreds of thousands of dollars in valuable assets which could have been used to benefit the bankruptcy estate.

*Loans from Insiders to the Debtors*

49. From September 2010 until the Petition Date, the Defendants caused the Debtor to borrow an additional $268,000 from Hill, which it booked as "Accounts Receivable Advances."

50. From September 2010 to the Petition Date, the Defendants caused the Debtor to borrow an additional $60,000 from Kamenz, which it booked as "Accounts Receivable Advances."

51. From September 2010 to the Petition Date, the Defendants caused the Debtor to borrow an additional $363,843.07 from Indaer International ("Indaer") and/or Consilium Technica ("Consilium"), which it booked as "accounts receivable advances."

52. Indaer and Consilium are owned by Nice and Drew.

53. Hill, Kamenz, Indaer, and Consilium are all either directors and officers of the Debtor or are owned by directors and officers of the Debtor.

54. These loans were unsecured loans.

55. All of these advances were repaid, with accrued interest and financing fees, within a few months of being made.

56. The Debtor has many non-insider creditors which have not been paid and which existed prior to the unsecured claims of Hill, Kamenz, Indaer, and Consilium.

57. The Defendants caused the Debtor to repay advances from insiders, with high interest rates and expensive financing fees, prior to repaying the Debtor's non-insider creditors.

*KNH Air Logistics, LLC*

58. On or around August 3, 2012, the Original Directors created KNH Air Logistics, LLC ("Logistics").

59. Logistics used the Debtor's hangars, employees, and tooling and equipment to remove parts from aircraft and then sell those parts to the Debtor.

60. Logistics did not maintain a separate premises or separate employees from the Debtor.

61. Logistics did not pay the Debtor for the use of the Debtor's hangars nor for the use of its employees.

62. Logistics did not perform any services which the Debtor was not capable of performing.

63. From Logistics' creation until the Petition Date, Logistics received $27,485.50 from the Debtor.

64. Logistics further injured the Debtor's business by performing services for third parties which the Debtor was capable of performing and which the Debtor routinely performed.

*Removal of Assets by Hill*

65. Prior to the Petition Date, Hill removed several airplane parts belonging to the Debtor and valued at approximately $60,000 from the Debtor's facilities and stored them at his personal residence.

66. The removal of these assets was not initially disclosed on the Debtor's bankruptcy schedules.

67. The removal of these assets was not initially disclosed to the Trustee.

68. There was no legitimate business reason to remove the assets from the Debtor's hangars to Hill's residence.

69. Upon discovery of such removal, the Trustee requested that Hill return the assets to the hangars but Hill refused.

70. There was no legitimate business reason to fail and refuse to return the assets to the Debtor's hangars once it was determined that the Debtor was going to file for bankruptcy.

71. Once the removal was disclosed to the Trustee, the Trustee was required to coordinate the return of these assets to the Debtor's premises and to pay for their recovery from Hill's residence.

## FOR A FIRST CAUSE OF ACTION
**(Breach of Fiduciary Duties of Care by Defendants re: Capitalization of the Debtor)**

72. The Trustee repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth verbatim herein.

73. As directors of the Debtor, the Defendants owed the Debtor fiduciary duties of care, which required Defendants to make informed business decisions and act with the care that a reasonably prudent person in a like position would exercise under similar conditions.

74. The owners of the Debtor have only been required to invest $200,000 in capital, which was invested in September or October 2010.

75. At the time that the owners invested the capital, they also loaned the Debtor $400,000 (the "Initial Loans").

76. Further, at the time that the owners invested the capital, the Debtor had an obligation to Maple Bank in the amount of $700,000.

77. When the Debtor began its operations in September 2010, it had capital of $200,000 and debt of $1.1 million.

78. The Debtor has always been insolvent and has never been properly capitalized.

79. A reasonably prudent person would have required the owners to properly capitalize the Debtor.

80. The Defendants had a duty to the Debtor to insure that the owners properly capitalized the Debtor but they did not do so.

81. The Debtor's undercapitalization required that the Debtor seek financing from alternative sources and led the Defendants to make further damaging financial decisions for the Debtor, such as the Sale Agreement and the Lease Agreement with Sun Air and the multiple loans from insiders which were repaid ahead of all other creditors.

82. By failing to insure that the Debtor was adequately capitalized, the Defendants

breached their fiduciary duties of care.

83. As a result of these breaches of fiduciary duty, the Debtor has suffered damages
for which the Defendants are liable.

## FOR A SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duties of Care by the Defendants re: Sun Air Sale Agreement)

84. The Trustee repeats and realleges the allegations contained in the preceding
paragraphs as if fully set forth verbatim herein.

85. As directors of the Debtor, the Original Directors owed the Debtor fiduciary
duties of care, which required the Original Directors to make informed business
decisions and act with the care that a reasonably prudent person in a like position
would exercise under similar conditions.

86. Pursuant to the Sale Agreement, the Debtor sold essential tooling and equipment
to Sun Air for at least $156,000 less than fair market value.

87. A reasonably prudent person would not have caused the Debtor to enter into the
Sale Agreement.

88. By causing the Debtor to enter into the Sale Agreement, the Original Directors
breached their fiduciary duties of care.

89. As a result of these breaches of fiduciary duty, the Debtor has suffered damages
for which the Original Directors are liable.

## FOR A THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duties of Care by the Defendants re: Sun Air Lease Agreement)

90. The Trustee repeats and realleges the allegations contained in the preceding
paragraphs as if fully set forth verbatim herein.

91. As directors of the Debtor, the Original Directors owed the Debtor fiduciary duties of care, which required the Original Directors to make informed business decisions and act with the care that a reasonably prudent person in a like position would exercise under similar conditions.

92. The Original Directors sold a portion of the Debtor's essential tooling and equipment to Sun Air pursuant to the Sale Agreement.

93. As a result, the Debtor entered into the Lease Agreement wherein it leased back that same tooling and equipment with an option to purchase.

94. The Lease Agreement required the Debtor to pay $500,000 over the course of ten years for tooling and equipment which the Debtor sold for $200,000.

95. A reasonably prudent person would not have caused the Debtor to enter into the Lease Agreement.

96. By causing the Debtor to enter into the Lease Agreement, the Original Directors breached their fiduciary duties of care.

97. As a result of these breaches of fiduciary duty, the Debtor has suffered damages for which the Original Directors are liable.

## FOR A FOURTH CAUSE OF ACTION
**(Breach of Fiduciary Duty of Care by Hill re: Sun Air Removal of Equipment)**

98. The Trustee repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth verbatim herein.

99. Prior to February 2012 and continuing until the present, Lundberg was and is an officer of Sun Air.

100.        As a director and/or officer of the Debtor, Hill owed the Debtor a fiduciary duty of care, which required Hill to make informed business decisions and act

with the care that a reasonably prudent person in a like position would exercise under similar conditions.

101.    Upon becoming aware that the Debtor may be filing bankruptcy, Hill contacted Lundberg and warned him that Sun Air should remove all of the assets which were subject to the Sale Agreement and the Lease Agreement before the Bankruptcy was filed.

102.    Approximately two days before the Bankruptcy was filed, Sun Air, with the assistance and cooperation of the Debtor, removed three shipping containers of assets from the Debtor's hangars and shipped them to Denmark.

103.    These assets are property of the bankruptcy estate.

104.    A reasonably prudent person would not have contacted Sun Air and advised them to remove these assets.

105.    A reasonably prudent person would not have allowed Sun Air to appear on site and remove these assets.

106.    By advising Sun Air to remove these assets, allowing Sun Air to remove these assets, and assisting Sun Air in the removal of these assets, Hill breached his fiduciary duty of care.

107.    As a result of this breach of fiduciary duty, the Debtor has suffered damages for which Hill is liable.

## FOR A FIFTH CAUSE OF ACTION
**(Breach of Fiduciary Duties of Loyalty by Hill and Lundberg re: Sun Air Removal of Equipment – Self-Dealing)**

108.    The Trustee repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth verbatim herein.

109.     Prior to February 2012 and continuing until the present, Lundberg was and is an officer of Sun Air.

110.     From December 12, 2011 to the present, Hill and YJM are the only two partners in a separate business venture, CCS.

111.     Lundberg is the 100% owner of YJM.

112.     As a director and/or officer of the Debtor, Hill owed the Debtor a fiduciary duty of loyalty, which required Hill to discharge his duties as director and/or officer in good faith and to refrain from engaging in conduct that would injure the Debtor.

113.     Hill's fiduciary duty of loyalty also required him not to engage in self-dealing to the detriment of the Debtor.

114.     Upon becoming aware that the Debtor might be filing bankruptcy, Hill contacted Lundberg and warned him that Sun Air should remove all of the assets which were subject to the Sale Agreement and the Lease Agreement before the Bankruptcy was filed.

115.     Approximately two days before the Bankruptcy was filed, Sun Air, with the assistance and cooperation of the Debtor, removed three shipping containers of assets from the Debtor's hangars and shipped them to Denmark.

116.     These assets are property of the bankruptcy estate.

117.     Hill's actions were in his own self-interest and were to protect his existing business venture with Lundberg.

118.     By advising Sun Air to remove these assets, allowing Sun Air to remove these assets, and assisting Sun Air in the removal of these assets, Hill breached his

fiduciary duty of loyalty.

119.     As a result of this breach of fiduciary duty, the Debtor has suffered

damages for which Hill is liable.

### FOR A SIXTH CAUSE OF ACTION
**(Breach of Fiduciary Duties of Care by the Defendants re: Insider Loans)**

120.     The Trustee repeats and realleges the allegations contained in the

preceding paragraphs as if fully set forth verbatim herein.

121.     As directors of the Debtor, Defendants owed the Debtor fiduciary duties of

care, which required Defendants to make informed business decisions and act

with the care that a reasonably prudent person in a like position would exercise

under similar conditions.

122.     After the Initial Loans, the Original Directors, either directly or through

entities, have loaned the Debtor over $690,000 in unsecured loans.

123.     These loans had high interest rates and financing fees.

124.     Each of these loans was repaid in full within a few months of being made

despite non-payment of the Debtor's other creditors.

125.     If the Debtor had been properly capitalized at the outset, these insider

loans would not have been necessary.

126.     A reasonably prudent person would not have caused the Debtor to obtain

these loans, as a reasonably prudent person would have required the owners of the

Debtor to infuse adequate capital.

127.     A reasonably prudent person would not have caused the Debtor to repay

these loans prior to the repayment of its other creditors.

128.     By allowing the Debtor to repay these insider loans, the Defendants

breached their fiduciary duties of care.

129.     As a result of these breaches of fiduciary duty, the Debtor has suffered

damages for which the Defendants are liable.

## FOR A SEVENTH CAUSE OF ACTION
**(Breach of Fiduciary Duties of Loyalty by the Original Directors re: Insider Loans –
Self-Dealing)**

130.     The Trustee repeats and realleges the allegations contained in the

preceding paragraphs as if fully set forth verbatim herein.

131.     As directors of the Debtor, the Original Directors owed the Debtor

fiduciary duties of loyalty, which required the Original Directors to discharge

their duties as directors and/or officers in good faith and to not engage in conduct

that would injure the Debtor.

132.     The Original Directors' fiduciary duties of loyalty also required them to

not engage in self-dealing to the detriment of the Debtor

133.     After the Initial Loans, the Original Directors, either directly or through

entities, have loaned the Debtor over $690,000 in unsecured loans.

134.     These loans had high interest rates and financing fees.

135.     Each of these loans was repaid in full within a few months of being made

to the detriment of the Debtor's other creditors.

136.     If the Debtor had been properly capitalized at the outset, these insider

loans would not have been necessary.

137.     The Original Directors' actions were in their own self-interests and were

calculated to insure that the Original Directors were repaid before any of the

Debtor's other creditors.

138.     By insuring that their unsecured loans would be repaid ahead of all other creditors, the Original Directors engaged in self-dealing and breached their fiduciary duties of loyalty.

139.     As a result of these breaches of fiduciary duty, the Debtor has suffered damages for which the Original Directors are liable.

**FOR AN EIGHTH CAUSE OF ACTION**
**(Breach of Fiduciary Duties of Care by the Original Directors re: KNH Air Logistics, LLC)**

140.     The Trustee repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth verbatim herein.

141.     As directors of the Debtor, the Original Directors owed the Debtor fiduciary duties of care, which required the Original Directors to make informed business decisions and act with the care that a reasonably prudent person in a like position would exercise under similar conditions.

142.     The Original Directors owned Logistics.

143.     Logistics removed parts from aircraft and sold those parts to the Debtor.

144.     Logistics used the Debtor's hangars, employees, and tooling and equipment to perform its services.

145.     Logistics did not compensate the Debtor for the use of its hangars, employees, or tooling and equipment.

146.     Logistics did receive compensation from the Debtor for airplane parts that it removed from planes and sold to the Debtor.

147.     Logistics was an unnecessary "middle man" that used the Debtor's employees and assets to remove parts from airplanes and then charged the Debtor

for these parts.

148.     Logistics did not perform any services that the Debtor could not perform.

149.     A reasonably prudent person would not have allowed Logistics to use the Debtor's hangars, employees, or tooling and equipment without adequate compensation to the Debtor.

150.     A reasonably prudent person would not have paid Logistics for services that the Debtor could have performed.

151.     The Original Directors breached their fiduciary duties of care.

152.     As a result of these breaches of fiduciary duty, the Debtor has suffered damages for which the Original Directors are liable.

**FOR A NINTH CAUSE OF ACTION**
**(Breach of Fiduciary Duties of Loyalty by the Original Directors re: KNH Air Logistics, LLC – Self-Dealing)**

153.     The Trustee repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth verbatim herein.

154.     As directors of the Debtor, the Original Directors owed the Debtor fiduciary duties of loyalty, which required the Original Directors to discharge their duties as directors and/or officers in good faith and to not engage in conduct that would injure the Debtor.

155.     The Original Directors owned Logistics.

156.     Logistics removed parts from aircraft and sold those parts to the Debtor.

157.     Logistics used the Debtor's hangars, employees, and tooling and equipment to perform its services.

158.     Logistics did not compensate the Debtor for the use of its hangars,

employees, or tooling and equipment.

159.     Logistics did receive compensation from the Debtor for airplane parts that it removed from planes and sold to the Debtor.

160.     Logistics was an unnecessary "middle man" that used the Debtor's employees and assets to remove parts from airplanes and then charged the Debtor for these parts.

161.     Logistics did not perform any services that the Debtor could not perform.

162.     The Original Directors' actions were in their own self-interest and to the detriment of the Debtor.

163.     The Original Directors breached their fiduciary duties of loyalty.

164.     As a result of these breaches of fiduciary duty, the Debtor has suffered damages for which the Original Directors are liable.

## FOR A TENTH CAUSE OF ACTION
**(Breach of Fiduciary Duties of Loyalty by the Original Directors re: KNH Air Logistics, LLC – Usurpation of Corporate Opportunity)**

165.     The Trustee repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth verbatim herein.

166.     As directors of the Debtor, the Original Directors owed the Debtor fiduciary duties of loyalty, which required the Original Directors to discharge their duties as directors and/or officers in good faith and to not engage in conduct that would injure the Debtor.

167.     The Original Directors' fiduciary duties of loyalty also required them not to usurp the Debtor's corporate opportunities.

168.     The Original Directors owned Logistics.

169.     Logistics removed parts from aircraft and sold those parts to the Debtor.

170.     Logistics used the Debtor's hangars, employees, and tooling and equipment to perform its services.

171.     Logistics did not compensate the Debtor for the use of its hangars, employees, or tooling and equipment.

172.     Logistics did receive compensation from the Debtor for airplane parts that it removed from planes and sold to the Debtor.

173.     Logistics was an unnecessary "middle man" that used the Debtor's employees and assets to remove parts from airplanes and then charged the Debtor for these parts.

174.     Logistics did not perform any services that the Debtor could not perform.

175.     The opportunity for the Debtor to perform the services that Logistics performed represents a corporate opportunity that could have been exercised by the Debtor.

176.     The Debtor had an interest in the opportunity to perform the services performed by Logistics and would have negotiated with the third parties to perform said services but for the Original Directors' actions in negotiating on behalf of Logistics to perform the services.

177.     The Debtor was capable of performing the services.

178.     The services provided by Logistics were the type of services routinely provided by the Debtor, and the Debtor possessed all of the necessary equipment and hangar space to perform the services.

179.     By causing Logistics to contract with third parties to perform services that

the Debtor routinely performed, the Original Directors were placed in a position inimical to their duties to the Debtor, resulting in a usurpation of the Debtor's corporate opportunity and breaches of their fiduciary duties of loyalty.

180.    As a result of these breaches of fiduciary duty, the Debtor has suffered damages for which the Original Directors are liable.

**FOR AN ELEVENTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty of Care by Hill re: Hill's Removal of Assets)**

181.    The Trustee repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth verbatim herein.

182.    As a director and officer of the Debtor, Hill owed the Debtor the fiduciary duty of care, which required Hill to make informed business decisions and act with the care that a reasonably prudent person in a like position would exercise under similar conditions.

183.    A few days prior to the Bankruptcy filing, Hill removed assets of the Debtor from the Debtor's property and stored them at his house.

184.    These assets had a substantial value and their removal was not initially disclosed to the Trustee.

185.    Upon discovery of such removal, the Trustee requested return of the assets but was refused.

186.    As a result, the Trustee was required to coordinate the return of these assets to the Debtor's hangars and to pay for their recovery.

187.    There was no legitimate business reason for removing these assets to Hill's house.

188.    A reasonably prudent person would not have allowed someone to remove

these assets from the Debtor's hangars.

189.        Hill breached his fiduciary duty of care.

190.        As a result of this breach of fiduciary duty, the Debtor has suffered damages for which Hill is liable.

WHEREFORE, having fully set forth her Complaint, the Trustee prays that the Court issue an Order and Judgment granting the following relief:

1. Damages in an amount to be determined at trial against Defendants for breaches of their fiduciary duties of care in allowing the Debtor to be undercapitalized;

2. Damages in an amount to be determined at trial against the Defendants for breaches of their fiduciary duties of care in entering into the Sale Agreement with Sun Air;

3. Damages in an amount to be determined at trial against the Defendants for breaches of their fiduciary duties of care in entering into the Lease Agreement with Sun Air;

4. Damages in an amount to be determined at trial against Hill for breach of his fiduciary duties of care and loyalty in allowing and assisting Sun Air in the removal of assets prior to the Bankruptcy;

5. Damages in an amount to be determined at trial against the Defendants for breaches of their fiduciary duties of care in causing the Debtor to take loans from the Original Directors and to repay these loans to the detriment of the Debtor's other creditors;

6. Damages in an amount to be determined at trial against the Defendants for

breaches of their fiduciary duties of loyalty in causing the Debtor to take loans

from the Original Directors and to repay these loans to the detriment of the

Debtor's other creditors;

7.  Damages in an amount to be determined at trial against the Defendants for

breaches of their fiduciary duties of care and loyalty as a result of the

relationship between the Debtor and Logistics;

8.  Damages in an amount to be determined at trial against Hill for breach of his

fiduciary duty of care as a result of the removal of assets prior to the

Bankruptcy filing; and

9.  For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED on this the 1st day of September, 2015, at

Columbia, South Carolina.

BARTON LAW FIRM, P.A.

BY:    /s/Barbara George Barton
        Barbara George Barton, #1221
        Adam J. Floyd, #10749
        Barton Law Firm, P.A.
        Attorneys for the Trustee
        1715 Pickens Street
        P. O. Box 12046
        Columbia, South Carolina 29211
        Tele: (803) 256-6582
        Fax: (803) 779-0267

# <u>EXHIBIT A</u>

**CORPORATE RESOLUTION**

**OF**

**KNH AVIATION SERVICES, INC.**

**d/b/a AVCRAFT TECHNICAL SERVICES**

WHEREAS, the undersigned are all the shareholders of **KNH Aviation Services, Inc. d/b/a AvCraft Technical Services**, a Delaware Corporation (the "Company"); and

WHEREAS, Company proposes to sell certain of its equipment to **Sun-Air of Scandinavia A/S**, a foreign corporation (the "Buyer") pursuant to the terms of that certain Equipment Purchase and Leaseback Agreement, dated November 22, 2011 (the "Purchase Agreement"), a copy of which has been circulated among the undersigned shareholders; and

WHEREAS, Buyer has agreed to purchase said equipment for **$ 200,000.00** pursuant to the terms of the Purchase Agreement, which the Company finds reasonable and in the best interest of the Company and its shareholders.

NOW, THEREFORE, BY AND THROUGH THE UNDERSIGNED SHAREHOLDERS, BE IT:

**RESOLVED THAT** the Company hereby agrees to sell certain of its equipment listed on the EXHIBIT attached to the Purchase Agreement to Buyer for $ 200,000.00 pursuant to the terms of the Purchase Agreement; and

**RESOLVED THAT**, in any present and in any future dealings between the Company and the Buyer relating to the transaction authorized herein, any of the Persons shown below (the "Authorized Agent") is authorized, on behalf of the Company, to transact with Buyer and to execute any documents, and take any further actions reasonably necessary to carry out the Resolutions herein:

| NAME | SPECIMEN SIGNATURE | TITLE |
|---|---|---|
| Michael B. Hill | *[signature]* | President |

**RESOLVED THAT**, all prior acts, dealings and undertakings with the Buyer by the Company and those on behalf of the Company by the individual named above are hereby ratified and confirmed.

**RESOLVED THAT**, the foregoing resolutions and the provisions hereof are in conformity with the organizational documents (e.g., articles of incorporation, bylaws, etc.) of the Company and the name and specimen signature of above-named persons is are authorized.

IN WITNESS WHEREOF, the undersigned shareholders of **KNH Aviation Services, Inc. d/b/a AvCraft Technical Services**, hereby sign and approve this Resolution as of _November 21_, 2011.

| Indaer International, Inc. | Flying Low, LLC | DIK, LLC |
|---|---|---|
| _____ *[signature]* | _____ *[signature]* | _____ *[signature]* |
| By: Derek Nice<br>Its: President and CEO | By: Michael B Hill<br>Its: Managing Member | By: Donald Kamenz<br>Its: Managing Member |

# CORPORATE RESOLUTION
## OF
# KNH AVIATION SERVICES, INC.
## d/b/a AVCRAFT TECHNICAL SERVICES

WHEREAS, the undersigned are all the shareholders of **KNH Aviation Services, Inc. d/b/a AvCraft Technical Services**, a Delaware Corporation (the "Company"); and

WHEREAS, Company proposes to sell certain of its equipment to **Sun-Air of Scandinavia A/S**, a foreign corporation (the "Buyer") pursuant to the terms of that certain Equipment Purchase and Leaseback Agreement, dated November _____, 2011 (the "Purchase Agreement"), a copy of which has been circulated among the undersigned shareholders; and

WHEREAS, Buyer has agreed to purchase said equipment for **$ 200,000.00** pursuant to the terms of the Purchase Agreement, which the Company finds reasonable and in the best interest of the Company and its shareholders.

NOW, THEREFORE, BY AND THROUGH THE UNDERSIGNED SHAREHOLDERS, BE IT:

**RESOLVED THAT** the Company hereby agrees to sell certain of its equipment listed on the EXHIBIT attached to the Purchase Agreement to Buyer for $ 200,000.00 pursuant to the terms of the Purchase Agreement; and

**RESOLVED THAT**, in any present and in any future dealings between the Company and the Buyer relating to the transaction authorized herein, any of the Persons shown below (the "Authorized Agent") is authorized, on behalf of the Company, to transact with Buyer and to execute any documents, and take any further actions reasonably necessary to carry out the Resolutions herein:

| NAME | SPECIMEN SIGNATURE | TITLE |
|------|--------------------|-------|
| Michael B. Hill | | President |

**RESOLVED THAT**, all prior acts, dealings and undertakings with the Buyer by the Company and those on behalf of the Company by the individual named above are hereby ratified and confirmed.

**RESOLVED THAT**, the foregoing resolutions and the provisions hereof are in conformity with the organizational documents (e.g., articles of incorporation, bylaws, etc.) of the Company and the name and specimen signature of above-named persons is are authorized.

IN WITNESS WHEREOF, the undersigned shareholders of **KNH Aviation Services, Inc. d/b/a AvCraft Technical Services**, hereby sign and approve this Resolution as of _____, 2011.

| Indaer International, Inc. | Flying Low, LLC | DIK, LLC |
|---------------------------|-----------------|----------|
| By: Derek Nice<br>Its: President and CEO | By: Michael B Hill<br>Its: Managing Member | By: Donald Kamenz<br>Its: Managing Member |

# **EXHIBIT B**



**Board of Directors Meeting**
**KNH Aviation Services, Inc d/b/a AvCraft Technical Services**
**Thursday, February 23, 2012 at 11:00 a.m.**

Any conflict of interest must be declared at the time the meeting is called to order or at such time as one arises during the meeting

Chairman                    Recording Secretary        Directors
Derek Nice                  Carol Drew                 Mike Hill
                                                       Donald Kamenz
                                                       Derek Nice
                                                       Carol Drew
                                                       Jesper Lundberg

**Participate**
Location: Myrtle Beach International Airport (offsite location) at Coastal Carolina Association of Realtors' boardroom located at, 951 Shine Avenue Myrtle Beach, South Carolina 29577

Date: February 23, 2012

Time: 11:15 a.m.

In Attendance: Tom Younan, CFO; Jesper Lundberg, Director; Donald Kamenz, Director; Derek Nice, Chairman of the Board and Director; Mike Hill, Director and President, Secretary and Treasurer of the Corporation ; and Carol Drew, Director.

Absentee: None
Total Board Members: Five

Motion to approval of agenda by all Board members – no objections

Mike motioned to elect new member to the board Jesper Lundberg. All board members accepted motion – no objections. Board of Directors signed the Resolution to accept Jesper Lundberg as a director.

**Agenda**
Motion to approval of agenda by all Board members – no objections

11:15 a.m. Board meeting called to order by Derek Nice

Business Arising
No business arising brought before the Board for follow-up from the prior Board of Directors Meeting.

There were no minutes read from the last board meeting so there was no motion carried or failed for those minutes.

1

New Business
Derek Nice – time allotment 20 minutes

Discussions with the Board about strategic direction of the company. He briefly discussed fulfilling the risk-oversight responsibilities of the Board. Other responsibilities include: delegation and termination; compliance; performance; and protected interests of AvCraft's shareholders; stakeholders, employees, customers, suppliers, creditors and its community.
 "Bright Red Line of Governance" Approach, Board oversees and Management manages AvCraft.
Hand out by Derek: Board Orientation and Risk Management information.

Tom Younan – time allotted 20 minutes
- Strategic Matters for Discussion/Decision
- Financial and Operating Review
- Review of 2011 operating results and financial indicators

Strategic Matters for Discussion
Tom's Introduction – business changed dramatically with new owners. It moved and grew rapidly. The volume of work and new airframes increased.  AvCraft challenged with the growth creating inefficiencies for the company. Commercial versus Corporate showed a/c part sales much lower and man hr rates lower.

Last quarter reduction in headcount improved margins and change in supervisory levels continues to show positive trends.

Q1 – Over view by Tom. Cost continues to be analyzed and controlled to ensure margin performance. Exploring funding. Focus is on creating higher efficiencies in operations to control costs. Looking into Q2 to see more improved results.

Financial and Operating Review
Tom reviewed financials – financial results (hand out).
Statement of Operation cost jumped and sales jumped in 2011 versus 2010.
Chairman asked about history and a comparison – Tom and Mike talked about the history and challenges. Jasper talked about history of the Dornier.

Operating Results
Tom talked about Statements of Operations, year to date period ended December 31, 2011 and 2010 and for the three months ended December 31, 2011 and 2010; Balance Sheets as at December 31, 2011 and 2010; Statement of Cash Flow for 2010 and 2011. Questions asked by board members for clarification.

Tom reviewed Preliminary Estimate year ending 12/31/2011; and reviewed Direct Costs / Margin year ending 12/31/2011.

Tom reviewed Operating Income / EBITDA year ending 12/31/2011.

2

Tom Younan – time allotted 20 minutes
- Review of Key Performance Indicators and Outlook.

Tom reviewed the overview of 2012 assumptions including the outlook and the key performance targets. Discussions of existing and new projects challenges and opportunities and the focus of AvCraft ensuring it keeps infrastructure and the indirect overhead growth controlled.

Derek talked about the Skyline Summary short term and long term customers and what customers and airframe type we have. Also, what we will target for Q1 2012 to Q1 2013.

Tom Younan – time allotted 10 minutes
- Quarterly Compliance Certificate.

Derek had the Quarterly Compliance Certificate reviewed and signed by Mike and Donald. All other board members reviewed. Tom would like to do due diligence prior to signing. Mindy Pavilonis, AvCraft's HR Manager, will sign the drug enforcement compliance portion of the certificate, as well. Chair requested a copy of the Certificate to be sent to all board members after everyone has signed. Mike and Donald both signed FAA parts 145 Compliance portion together.

Tom Younan – time allotted 10 minutes
- Review and approval of auditor engagement letter.

Tom handed out copies of the Auditor Engagement letter to all board members for each one to review. Tom expressed that the auditors work for the board and not AvCraft. Last year's fee to Elliott Davis applies again this year.  The letter is to confirm that the AvCraft board agrees with Elliott Davis's understanding of the terms and objectives of their engagement with us.

Board motion to accept Mike Hill as the signing authority on behalf of the board. Motion carried by all board members – no objection.

Derek Nice – time allotted 60 minutes.
- Strategic Plan Update/Review.

Business development opportunity to form a venture between Sun Air and AvCraft. Conversations have been going on to discuss the opportunities between the two parties. Due diligence has to be done. AvCraft and Sun Air are in the preliminary stages of talk.

Mike will take the lead, and Mike and Jesper will coordinate their efforts and structure a plan together that can be presented to the board.

Donald Kamenz – time allotted 20 minutes
* Marketing Plan Update/Review.

Donald reviewed our marketing opportunities – past, present and future. Discussed aircraft and customer focus.


Donald Kamenz - time allotted 20 minutes
* Continuous Improvement Plan update.

Donald discussed past turbulence in our operation and addressed the "Continuous Improvement Plan" that has been implemented.  Focus: training initiatives; hiring highly skilled mechanics; encouraging managers, supervisors and leads to empower employees; increasing productivity and efficiencies; understanding past experience; and positive reinforcement.


Donald Kamenz - time allotted 20 minutes
* Quality Assurance review.

Presented by Donald -Talked about FAA, two incidents of which one was self disclosed. One investigation is still open with the FAA. One incident resolved and negligence was not a factor in the finding. Customer is under scrutiny for not disclosing information.

Major audit done and AvCraft given stamp of approval. FAA was very pleased with the operation.


Jesper Lundberg – time allotted 40 minutes
* Risk Management Strategy.

Risk and liability chart presented as a brain storming and teaser exercise.  Jesper will provide a work package for members to review.  Discussion included: Implementation of risk management; Jesper background involving risk management; employee protection; business protection; management style starting at the top to the bottom; cultural spirit; communications; project management; finance; and internal and external risk.

Further detailed discussion to be held in a meeting outside our board meetings to talk about managing risk in each department. Mike and Jesper will further discuss as to plans to implement Risk Management going forward. Meeting date to be determined.

Tom Younan – time allotted 10 minutes
- Review of amended Delegated Authorities.

The matrix which was distributed to the board by Tom outlined the approval and authorization guidance for all of AvCraft's activities and transaction processes. XRCA means: A approval; R recommends; C concur; and A advised only.

The board will review the XRCA chart and give their remarks back to Mike. Mike will take the lead. Mike will provide feedback for Tom based on the board member's recommendations.


Derek Nice – time allotted 10 minutes
- Date and time of next board meeting.

Next board meeting Tuesday, April 24th, agreed by the Board. There will be a review of the financial statements and the preliminary results for 2012.

Jesper and Mike to come up with an agenda on cash flow implementation, input from Jesper to present to Tom next week.

Jesper and Carol In Camera 3 minutes to discuss feelings of management team. No issues presented at this time.

Chair motioned to close the Board Meeting. All board members in favor – no objections.

Board Meeting adjourned at 4:00 p.m.

5

# **<u>EXHIBIT C</u>**



March 3, 2015

Niels Sundberg
President and CEO
Sun-Air of Scandinavia A/S
Cumulusvej 10
 DK-7190 Billund
Denmark

Re: Machinery and Equipment Under Equipment Lease With Option to Purchase

Dear Niels:

This letter concerns measures to protect the machinery and equipment under the <u>Equipment Lease With Option to Purchase</u> between KNH Aviation Services, Inc., d/b/a AvCraft Technical Services ("<u>KNH</u>"), as lessee, and Sun-Air of Scandinavia A/S ("<u>Sun-Air</u>"), as lessor. KNH's current situation requires immediate action in moving the machinery and equipment to another location, or in satisfying conditions for the continued use of a portion of the premises now leased by KNH from Horry County, South Carolina.  KNH does not have the ability to move and store the machinery and equipment, or to extend its use of the leased premises, without funding from Sun-Air.

KNH was unsuccessful in reaching an agreement to modify its lease with Horry County for the continued use and occupation of the three hangar buildings at the Myrtle Beach airport facilities. As a result, KNH is forced to vacate two of the hangar buildings (Hangar Building #352 and Hangar Building # 355) by March 7, 2015, and to vacate the third hangar building (Hangar Building # 358) by March 22, 2015.  Further use of Hangar Building # 358 may be allowed if certain conditions are met, which conditions include payment of amounts due to Horry County.

Horry County filed an eviction action against KNH with respect to the three leased hangar buildings and leased automobile parking spaces.  KNH could not prevent the eviction and, instead, had to negotiate for an allowed period of time to move the personal property items from the leased premises.  The negotiated terms are stated in the attached <u>Consent Order of Settlement</u> filed in Horry County's eviction action.

At this time, Sun-Air needs to do one of the following: (1) move its machinery and equipment by March 22, 2015, (2) provide funds to KNH to move it to another location, or (3) arrange a payment that will enable an agreement with Horry County to extend the period of occupation and use of Hangar Building # 358.  KNH does not have the ability to move the machinery and equipment, to store it indefinitely, or to make payments to Horry County as required to extend the time of KNH's occupation of the leased premises.

KNH intends to proceed with an orderly liquidation of its assets to pay its creditors to the extent possible.  KNH may file a bankruptcy case under Chapter 7 of the U.S. Bankruptcy Code (11 U.S.C. § 101, *et seq.*), but it hopes to avoid the necessity of such a filing.  KNH believes that it can liquidate its assets for better value than could a bankruptcy trustee, that the costs of a bankruptcy would reduce funds available for payment of creditors, and that the creditors will likely receive payment from this type of liquidation much sooner than they would in a bankruptcy case (where it could easily be two years or longer before a distribution would be made to creditors), and KNH will proceed with this approach.

In the meantime, however, it is urgent that the property items located in the premises leased from Horry County be moved from the premises by March 22, 2015.

Please advise me as soon as possible on Sun-Air's response to this need to provide for the movement or disposition of its machinery and equipment.  KNH would like to see Sun-Air's rights and interests in its machinery and equipment protected.

I hope to hear from you soon.

With best regards,

Michael B. Hill
President
AvCraft Technical Services
3301 Mustang Street
Myrtle Beach, SC 29577